[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12560
Non-Argument Calendar

_____

Agency No. A087-604-252

XIN MIAO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 7, 2014)

Before HULL, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

Xin Miao seeks review of the Board of Immigration Appeals' order

affirming the denial of her application for asylum, withholding of removal, and

relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment (CAT). Ms. Miao, a native and citizen of China, alleged that she had been persecuted, detained, and abused by Chinese police for her participation in an underground Christian church. The Immigration Judge denied relief, finding that Ms. Miao was not credible and failed to meet her burden of proof due to lack of corroboration. The BIA affirmed, and this appeal followed.

On appeal, Ms. Miao argues that the BIA erred in upholding the IJ's adverse credibility determination without giving her notice and an opportunity to submit additional corroborating evidence under a provision of the REAL ID Act, 8 U.S.C. § 1158(b)(1)(B)(ii). In addition, she contends that the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture is not supported by substantial evidence. After review of the administrative record and consideration of the parties' briefs, we deny Ms. Miao's petition for review.

## I

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (internal quotation marks omitted).

Because a credibility determination is a finding of fact, "we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Ruiz v. U.S. Att'y Gen.*, 440 F. 3d 1247, 1255 (11th Cir. 2006) (internal quotation marks omitted). We may not reverse the credibility finding unless the record so compels. *Id.*

Here, the IJ and the BIA articulated specific, cogent reasons, supported by record evidence, for the adverse credibility determination, and nothing in the record compels reversal of this finding. Specifically, the IJ found that (1) a written statement by Ms. Miao in support of the asylum application omitted key details of her claim; (2) neither her written statement nor a letter submitted by her mother mentioned that the Chinese police continued to visit her parents' house, as she testified before the IJ; (3) she gave inconsistent descriptions of her alleged mistreatment by the Chinese police; (4) her testimony regarding her living arrangements in China was contradicted by the Chinese household registration; (5) her testimony regarding the details of her alleged arrest was contradicted by her mother's letter; and (6) she visibly struggled to name her church leader's favorite Bible story. The BIA correctly found that these inconsistencies and omissions provided an appropriate basis for an adverse credibility finding under the REAL ID Act. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) ("a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or

3

witness, . . . the consistency between the applicant's or witness's written and oral statements . . . , the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements"). Although Ms. Miao argues that these inconsistencies are not significant enough to warrant an adverse credibility determination, under the REAL ID Act, inaccuracies and omissions need not go to the heart of the claim to support an adverse credibility finding. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228,1233 (11th Cir. 2006). Ms. Miao also provides various explanations for these inconsistencies and omissions, but we decline her invitation to reweigh the evidence. *See D-Muhamed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) ("[T]his court may not substitute its judgment for that of the BIA with respect to credibility findings."). In any event, her explanations, even if reasonable, do not compel reversal of the adverse credibility determination.

## II

Substantial evidence also supports the IJ's and BIA's conclusion that Ms. Miao failed to provide reasonably available corroborating evidence. Aside from two cursory letters written by her mother and a neighbor in China, Ms. Miao submitted no documentary evidence in support of her claims of adherence to Christianity and persecution by Chinese authorities. For example, she failed to

4

submit any records concerning her alleged arrest, subsequent bond payment, and weekly check-ins with the Chinese police. Neither her father—whom she alleged paid the bond necessary to obtain her release from prison and helped her leave the country by securing a job on a cruise ship—nor any member of her underground church in China provided a statement in support of her claims. Nor did she provide any documentation of her church membership or baptism in either China or the United States. Although Ms. Miao offered several reasons why she failed to submit this evidence, the record does not compel a finding that such evidence was not reasonably available. For example, she testified that the police provided her with no documentation of her arrest, but she did not claim that such records would be unavailable if requested. In addition, Ms. Miao admitted that she could obtain at least some documents to corroborate her claims but failed to explain why, despite having more than two years between the submission of her asylum application and her removal hearing, she failed to do so.

Ms. Miao nonetheless argues that the REAL ID Act required the IJ to give her notice and an opportunity to produce additional evidence after determining that her testimony needed corroboration. Although we have not previously addressed whether, and to what extent, the REAL ID Act requires notice of the need for corroborating evidence, we need not reach this issue here because Ms. Miao does not point to any statutory language or case law that could be read to impose such a

requirement following an adverse credibility determination. If 8 U.S.C. § 1158(b)(1)(B)(ii) contains a notice requirement at all, such a requirement would only apply where the applicant's testimony is "otherwise credible." *See id.* ("Where the trier of fact determines that the applicant should provide evidence that corroborates *otherwise credible testimony*, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.") (emphasis added). This reading of the Act appears to be in accord with that of those circuits which have read the Act to include a notice requirement. *See Guta-Tolossa v. Holder*, 674 F.3d 57, 64 (1st Cir. 2012) ("If section 1158(b)(1)(B)(ii) does include a notice requirement, the requirement would only apply where an IJ finds an applicant's testimony 'otherwise credible.'"); *Ren v. Holder*, 648 F.3d 1079, 1092 n.13 (9th Cir. 2011) ("[N]otice and opportunity to respond applies only in the case of an applicant deemed credible by the IJ."). *But see Abraham v. Holder*, 647 F.3d 626, 633 (7th Cir. 2011) (holding that the REAL ID Act does not require notice or an additional opportunity to provide corroborative evidence before an adverse ruling). Because the IJ and BIA found that Ms. Miao's testimony was not credible, she had no right, statutory or otherwise, to an additional opportunity to submit corroborating evidence in order to remedy that determination.

6

## III

The BIA considered Ms. Miao's application for protection under CAT separately, finding that she failed to "establish that it is more likely than not that . . . she would be tortured if removed to [China]." 8 C.F.R. § 208.16(c)(2). Substantial evidence supports this conclusion. "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment . . . ." *Id.* § 1208.18(a)(2). Ms. Miao testified to being slapped repeatedly by the Chinese police during a three-day detention following her arrest. While she alleges that she became dazed and confused as a result, she did not otherwise claim that she suffered any form of "severe pain or suffering." *See Id.* § 1208.18(a)(1). Her testimony, which the IJ found lacked credibility, thus does not establish that Ms. Miao suffered past mistreatment rising to the level of extreme cruel and inhuman treatment, and she offered little else that could support a finding that it is more likely than not that she would be tortured in the future if returned to China. *See id.* § 208.16(c)(3)(i). Accordingly, the BIA correctly found that Ms. Miao failed to satisfy her burden of proof for withholding of removal under CAT.

7

## IV

For the foregoing reasons, we affirm the IJ's and BIA's denial of Ms. Miao's asylum and withholding of removal claims based on the adverse credibility determination and a failure to provide corroborating evidence. We further affirm the BIA's denial of her claim to relief under CAT because Ms. Miao failed to submit sufficient evidence to demonstrate that it was more likely than not that she would be tortured upon her return to China.

**PETITION DENIED.**